UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CR-50 DRL-MGG |
| EDWARD SANDERS, | |
| Defendant. | |

OPINION & ORDER

The government charged Edward Sanders with possessing cocaine with intent to distribute and unlawfully possessing a firearm as a felon. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 922(g)(1). On June 18, 2020, Mr. Sanders filed a motion to suppress the evidence obtained by law enforcement the night he was arrested. He says his initial seizure violated the Fourth Amendment. The court held an evidentiary hearing on September 10, 2020 given the factual discrepancies. *See United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). The court now denies the motion to suppress.

FACTUAL FINDINGS

These facts emerged from the evidence and testimony presented to the court.[1] *See* Fed. R. Crim. P. 12(d). On January 2, 2020, Michigan City Police Officer Adam Brinkman was assigned to routine vehicle patrol in an area of Michigan City, Indiana. Tr. 6, 8. Before he left, around 2:30 p.m., he received a tip from Lieutenant Richardson, head of the drug task force, that a black Dodge Charger with a specific license plate, owned by a woman known to law enforcement, had been seen leaving a suspected drug house. Tr. 21. The tip was provided by a member of the public. *Id.*

---

[1] Mr. Sanders called Officer Adam Brinkman. The government called Corporal Michael Oberle.

Around 5:10 p.m., Officer Brinkman was traveling eastbound on West 9th Street nearing the intersection of West 9th Street and Ohio Street in Michigan City, Indiana. Tr. 8-9; Ex. 1. He saw a Dodge Charger traveling on Chicago Avenue headed towards West 9th Street. Tr. 9. As soon as the vehicle turned right on to West 9th Street, Officer Brinkman recognized it as matching the tip from Lieutenant Richardson. Tr. 14-15. He could not, however, identify how many people were in the vehicle because the windows were tinted. Tr. 23.

Seconds before 5:11 p.m., the Dodge Charger approached the stop sign at the intersection of West 9th Street and Ohio Street. Ex. 1. Its brake lights activated, and it slowed down at the stop sign. Tr. 11; Ex. 1. Officer Brinkman followed the vehicle on West 9th Street past Ohio Street. *Id.* He activated his emergency lights and pulled the vehicle over on the side of West 9th Street. Ex. 1. Before Officer Brinkman exited his squad car, he notified dispatch of his location and called Michigan City Police Officer (now Corporal) Michael Oberle, a canine officer, who was only a few blocks away. Tr. 13, 26-27. He then approached the vehicle, but he still couldn't see how many people were in it because it was dark outside and the windows were tinted. Tr. 27.

As Officer Brinkman walked towards the vehicle, the driver rolled down the window and gave him her license. Ex. 2. Officer Brinkman looked at the front seat passenger and asked him for his name. The passenger said "Eddie Sanders." Officer Brinkman returned to his squad car to run their information through his computer. Tr. 29. He learned that Mr. Sanders had a prior conviction for dealing cocaine. Tr. 29-30. He also ran the vehicle's license plate to make sure it wasn't stolen. Tr. 30.

At 5:17 p.m., while Officer Brinkman was in his squad car inputting the driver's and Mr. Sanders' information in his computer, Corporal Oberle, along with his canine partner, Axel, approached the Dodge Charger. Ex. 1. The canine and officer circled the vehicle. As Axel passed the passenger door (in between the rear and front seats), he alerted to the presence of drugs. *Id.* Officer Brinkman had not finished writing his ticket when Axel's alert prompted Officer Brinkman and other

2

officers to order the driver and passenger out of the vehicle. Tr. 32-34, 37. Officers then searched the vehicle. Officer Brinkman found a tan Crown Royale bag that contained two packages of an off-white, rock-like substance. Tr. 34. The driver and Mr. Sanders were handcuffed as the search continued. Tr. 34. Law enforcement then found a handgun and additional narcotics, including marijuana, heroin, fentanyl, suboxone, and crack cocaine. Tr. 35, 37.

Both the driver and Mr. Sanders were arrested and taken to the Michigan City Police Department. The driver was issued a citation for not coming to a complete stop at the stop sign and for having a vehicle with windows too darkly tinted. Tr. 37. Mr. Sanders was charged with possessing cocaine with intent to distribute and unlawfully possessing a firearm as a felon.

## DISCUSSION

The Fourth Amendment to the United States Constitution establishes the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." As the constitutional text suggests, the "touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). It protects a person in his home and on the street, in his room and in his car, on a driveway or boulevard. It protects people, not places. *Katz v. United States*, 389 U.S. 347, 351 (1967); *see also Terry v. Ohio*, 392 U.S. 1, 8-9 (1968).

To that end, an automobile stop by law enforcement, even if brief, constitutes a seizure of a person within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). An automobile stop initiated by law enforcement must be reasonable. *Whren*, 517 U.S. at 810. Evidence obtained from an unreasonable search or seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

The government bears the burden of proving by a preponderance of the evidence that a warrantless stop complied with the Fourth Amendment. *United States v. Peters*, 743 F.3d 1113, 1116

3

(7th Cir. 2014); *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011). The government has met its burden in this case.

      A.      *Officer Brinkman Had Probable Cause to Stop the Dodge Charger.*

A law enforcement officer's decision to stop an automobile is reasonable when he has probable cause to believe that a traffic violation has occurred.[2] *Whren*, 517 U.S. at 809-10; *United States v. Lawuary*, 211 F.3d 372, 375 (7th Cir. 2000). "Probable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.'" *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (quoting *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)). It matters not whether a traffic offense actually occurred; the court must only inquire whether the officer had probable cause to believe one occurred. *See id.*

Even minor traffic violations can provide law enforcement officers probable cause to stop a vehicle. *See United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (following a vehicle too closely); *Muriel*, 418 F.3d at 724 (same); *Cashman*, 216 F.3d at 586 (driving with cracked windshield); *United States v. Smith,* 668 F.3d 427, 431 (7th Cir. 2012) (failing to signal for a turn); *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (straddling lanes and failing to signal before a turn, and driving with cracked windshield); *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995) (speeding). Both failing to stop at a stop sign and driving with tinted windows can likewise provide probable cause for a stop. *See, e.g., United States v. Seay,* 2020 U.S. Dist. LEXIS 150093, 14 (N.D. Ind. Aug. 19, 2020) (DeGuilio, J.) (stop sign); *Burdette v. Foote*, 2020 U.S. Dist. LEXIS 12985, 3 (N.D. Ind. Jan. 24, 2020) (Lee, J.) (license plate light and tinted windows); *United States v. Davis*, 2019 U.S. Dist. LEXIS 186250, 22-23

---

[2] A traffic stop is often more akin to a *Terry* stop that requires only reasonable suspicion and articulable facts to believe the person has violated the law. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015); *see Terry*, 392 U.S. at 21. A law enforcement officer may stop a vehicle when there is "at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Because the court finds that law enforcement had probable cause here, it need not analyze the stop under *Terry*.

(S.D. Ill. Oct. 28, 2019) ("A reasonable officer would therefore have been justified in stopping the vehicle to investigate whether the brake[] lights were illegally tinted.").

Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "does not require an actual showing of criminal activity, or even that the existence of criminal activity is more likely true than not." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (quotations omitted). By definition, probable cause looks to probabilities—"examining the totality of the circumstances in a common sense manner," *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003), and the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)). Probable cause is determined by reasonable conclusions drawn from the facts known to the officer at the time of the search or arrest. *Maryland* v. *Pringle*, 540 U.S. 366, 371 (2003). A law enforcement officer may act based on firsthand observations or the collective knowledge of law enforcement when officers communicate with each other. *United States. v. Williams*, 627 F.3d 247, 252-53 (7th Cir. 2010); *United States v. Ellis*, 499 F.3d 686, 690 (7th Cir. 2007).

Here, the government cites two traffic violations that Officer Brinkman believed the driver of the Dodge Charger committed: failure to make a complete stop and illegal window tinting. First, under Indiana law, "[a] person who drives a vehicle shall stop at an intersection where a stop sign is erected at one (1) or more entrances to a through highway that are not a part of the through highway and proceed cautiously, yielding to vehicles that are not required to stop." Ind. Code § 9-21-8-32. A person who drives a vehicle must obey the posted markings or signs, including stop signs, Ind. Code § 9-21-4-18; and a failure to do so constitutes a class C infraction, Ind. Code § 9-21-4-19.

To be sure, the driver didn't blow through the stop sign at the intersection of West 9th and Ohio Street. *See* Ex. 1. Her brake lights flashed; she slowed; and she came close to making a full stop. But the dashcam video doesn't definitively show her making a complete stop. The court can only view

the vehicle from directly behind it, with no three dimensional or side perspective. It is impossible to tell if the tires in the back continue to move as the vehicle slows at the sign.

Whether the driver actually committed the violation is beside the point. *See Muriel*, 418 F.3d at 724. The circumstances here are similar to those in *Muriel*: the court has video evidence where it is a "close question whether [the defendant] was [committing a traffic violation]," but it cannot definitively see a traffic violation or the absence of one. *Id.* In fact, this court examined the videotape dozens of times and never once was confident the vehicle made a full stop, albeit a close call. Thus, the court must look to the rest of the record, specifically the testimony of Officer Brinkman. The court found him credible given his detailed recollection and proximity to the vehicle. He testified that the Dodge Charger slowed down "but didn't come to a complete stop before entering the intersection." Tr. 11. He saw that its brake lights came on. Tr. 11-12. "Even though the vehicle slowed it did not come to a complete stop at the stop sign like you are supposed to." Tr. 39. According to Officer Brinkman, a complete stop occurs when "there's no forward momentum on the vehicle." Tr. 39. He said he saw the Dodge Charger maintain forward momentum. *Id.*

It was reasonable for Officer Brinkman to believe the driver rolled the stop sign. The court's inquiry is confined to whether it was objectively reasonable for Officer Brinkman to believe the Dodge Charger didn't come to a full stop. Officer Brinkman viewed the vehicle in three dimensions, with the benefit of a clear picture and proximity. It was reasonable for him to believe the driver didn't fully stop, thereby committing a traffic violation.

Second, in Indiana, a person may not drive a motor vehicle that has a windshield, side window, or rear back window that is tinted with material "that has a total solar reflectance of visible light of more than twenty-five percent (25%) as measured on the nonfilm side and light transmittance of less

6

than thirty percent (30%) in the visible light range." Ind. Code § 9-19-19-4(c).[3] "[E]vidence that [the defendant's] window tint complied with the [Indiana] Window Tint Statute would serve to absolve him of the window tint violation, but it would not negate the officers' reasonable suspicion based on their observations." *Doctor v. State*, 57 N.E.3d 846, 854 (Ind. Ct. App. 2016). The question remains whether it was reasonable for Officer Brinkman to believe the driver violated the law by maintaining improper window tinting. *See Muriel*, 418 F.3d at 724. Here, the tinted windows provided Officer Brinkman an independent constitutional basis to pull over the Dodge Charger.

Mr. Sanders claims that "the officer told [the court] that he does not routinely stop people for tinted windows…[and that Officer Brinkman] had had prior encounters with [the driver], and [the court] didn't hear anything about her getting tickets for tinted windows on that car." Tr. 67. In other words, Mr. Sanders argues that Officer Brinkman's justification is nothing but back-building a case for probable cause.

Law enforcement cannot rely on information gathered after an arrest and back-build a case for probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause is determined by reasonable conclusions drawn from the facts known to the arresting officer at the time of the arrest. *Pringle*, 540 U.S. at 371. "Whether [an] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment

---

[3] Before January 1, 2015, the Indiana tinted window statute stated: "A person may not drive a motor vehicle that has a: (1) windshield . . . tinted to the extent or manufactured in a way that the occupants of the vehicle cannot be easily identified or recognized through that window from outside the vehicle." Ind. Code § 9-19-19-4(c) (2013); *see* Ind. P.L. 217 (2014). The government relies on this language in its briefing. *See* ECF 20 at 8. Now, the statute is qualified by different language: "A vehicle may be stopped to determine compliance with this section. However, a vehicle . . . or passenger in a vehicle may not be . . . detained solely because of a violation of this section." Ind. Code § 9-19-19-4(f). Whatever conundrum this language might create—allowing a vehicle to be stopped but not detained, *see Whren*, 517 U.S. at 809 (stop of an automobile is a "temporary detention" constituting a "seizure" under the Fourth Amendment)—neither party argues it, and wisely so because this case turns on the federal constitution, not state statutory allowances or restrictions. *See Virginia v. Moore*, 553 U.S. 164, 171-72 (2008) ("We concluded that whether state law authorized the search was irrelevant. States, we said, remained free to impose higher standards on searches and seizures than required by the Federal Constitution, but regardless of state rules, police could search a lawfully seized vehicle as a matter of federal constitutional law.") (quotations and citations omitted).

the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck,* 379 U.S. at 91.

Officer Brinkman's motives didn't strip him of his legal justification to stop the vehicle. *See Whren*, 517 U.S. at 812-13. When asked what he observed on January 2, 2020, he said, "I observed the Dodge Charger with dark tinted windows turn on to West 9th Street." Tr. 11. When he saw the Dodge Charger in front of him, he said he could not see who was sitting in it because the windows were that dark. Tr. 23. Nor could he tell how many people were in it because the windows were tinted. *Id.* Officer Brinkman began writing a ticket not just for the failure to stop, but for illegal tinting. Tr. 13.

The court finds Officer Brinkman credible, and the video evidence verifies that the windows were darkly tinted. It was reasonable for the officer to believe the driver violated Ind. Code § 9-19-19-4(c) even if he didn't actually know that the windows had "a total solar reflectance of visible light of more than twenty-five percent (25%) as measured on the nonfilm side and light transmittance of less than thirty percent (30%) in the visible light range." *See also Muriel*, 418 F.3d at 724. He reasonably believed the windows were unlawfully tinted. In short, Officer Brinkman had probable to cause to make the stop. The stop was justified under the Fourth Amendment.

> B. *Officer Brinkman Had Probable Cause to Search the Driver's Vehicle and He Didn't Unreasonably Prolong the Initial Stop.*

Mr. Sanders doesn't challenge law enforcement's probable cause to search the driver's vehicle after the canine positively alerted to drugs in it. After all, a positive alert by a canine provides law enforcement with probable cause to search a vehicle. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Such a tactic implicates Fourth Amendment concerns when its execution unreasonably prolongs the traffic stop. *Id.* at 407.

A stop that started lawfully can violate the Fourth Amendment if its manner of execution unreasonably infringes upon interests protected by the Constitution. *Caballes*, 543 U.S. at 407. For

example, "[q]uestioning that prolongs the detention, yet cannot be justified by the purpose of such an investigatory stop, is unreasonable under the [F]ourth [A]mendment." *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) (*en banc*). A seizure that is justified "solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably necessary to complete that mission." *Caballes*, 543 U.S. at 407.

Here, Mr. Sanders argues that his stop was unreasonably prolonged because he should have never been stopped at all. As discussed, Officer Brinkman had probable cause to pull over the Dodge Charger. But that doesn't mean the driver and Mr. Sanders could be stopped beyond the time necessary for Officer Brinkman to issue tickets for the two traffic violations.

The constitutionally permissible duration of a traffic stop is "determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citations omitted). Running a computer search for warrants on a detainee during a traffic stop is constitutional. *United States v. Green*, 111 F.3d 515, 519 (7th Cir. 1997). "Unrelated inquiries may not measurably prolong a traffic stop, although an officer may conduct ordinary inquiries incident to the stop such as questions involving the driver's license, the vehicle's registration, and whether there are outstanding warrants for the driver." *United States v. Stewart*, 902 F.3d 664, 671-72 (7th Cir. 2018). If the purpose of the stop is to write a ticket for a traffic violation, it may last no longer than is necessary to effectuate that purpose. *Rodriguez*, 575 U.S. at 354.

There is no real concern here that Officer Brinkman unreasonably prolonged the initial stop. From the time Officer Brinkman stopped the vehicle to the canine's positive alert to drugs, only about six minutes passed (5:11:41 p.m. to 5:17:48 p.m.) (Ex. 1). That wasn't longer than needed under the circumstances. *See United States v. Lopez*, 907 F.3d 472, 486 (7th Cir. 2018) ("The question does not depend on exactly how many minutes the stop lasts. It depends on whether law enforcement has detained the person longer than needed to carry out the investigation that was justified by the

reasonable suspicion."); *see, e.g., United States v. Sanford*, 806 F.3d 954, 957 (7th Cir. 2015) (total time of 26-27 minutes from the initial stop of the vehicle to the dog alert was reasonable). In the approximate six minutes, Officer Brinkman secured identification of the two individuals in the vehicle, asked brief questions, proceeded to his vehicle, and began preparation of the citations and warrant search. He took less than five of those six minutes inputting their information into his computer when Axel (the canine) alerted to drugs. Ex. 2; Tr. 32. Officer Brinkman hadn't finished writing his tickets at that point. Tr. 37. This was not an unconstitutionally prolonged stop.

## CONCLUSION

The Fourth Amendment prohibits unreasonable searches and seizures, not good police work justified by probable cause. Law enforcement in this case had probable cause and otherwise acted reasonably in the search and seizure the night of January 2, 2020. The court DENIES Mr. Sander's motion to suppress evidence (ECF 18).

SO ORDERED.

October 2, 2020                                       *s/ Damon R. Leichty*
                                                      Judge, United States District Court